OPINION
{¶ 1} This timely appeal arises from the conviction of Steven Cole ("Appellant") in Youngstown Municipal Court for violating a loud music ordinance. Appellant argues on appeal that the ordinance is unconstitutionally vague, overbroad and violates the First Amendment. For the following reasons, we overrule Appellant's assignments of error and affirm the judgment of the trial court.
 {¶ 2} On September 1, 2000, Appellant was cited for a violation of former Youngstown Municipal Ordinance ("Ord.") 539.07(b)(1). This ordinance has since been substantially amended, but at the time Appellant was cited the ordinance stated as follows:
 {¶ 3} "No person shall play any radio, music player or an audio system in a motor vehicle at such volume as to disturb the quiet, comfort or repose of other persons or at a volume which is plainly audible to persons other than the occupants of said vehicle."
 {¶ 4} On October 10, 2000, Appellant filed a motion to dismiss the charge on constitutional grounds. The court denied the motion on October 24, 2000. On March 22, 2001, Appellant entered into a Crim.R. 11 plea agreement. Appellant pleaded no contest to the charge and an additional charge of driving with unlawful license plates was dismissed. The court determined that this was Appellant's second violation of Ord. 539.07(b)(1). It sentenced him to sixty days in jail, with all sixty days suspended; twelve months of probation; and a $400.00 fine. Appellant filed this timely appeal on April 13, 2001.
 {¶ 5} Appellant's first and second assignments of error are related and will be treated together in our review:
 {¶ 6} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S MOTION TO DISMISS BECAUSE SECTION 539.07 OF THE YOUNGSTOWN CODIFIED ORDINANCES IS UNCONSTITUTIONALLY OVERBROAD AND VAGUE, AND INFRINGES ON APPELLANT'S RIGHTS GUARANTEED UNDER THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION.
 {¶ 7} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S MOTION TO DISMISS BECAUSE SECTION 539.07(b)(1) OF THE YOUNGSTOWN CODIFIED ORDINANCES AS APPLIED TO APPELLANT IS UNCONSTITUTIONALLY OVERBROAD BECAUSE IT INFRINGES UPON CONSTITUTIONALLY PROTECTED SPEECH IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 11 OF THE OHIO CONSTITUTION."
 {¶ 8} Appellant raises three issues regarding the constitutionality of Ord. 539.07(b)(1). We begin our review by noting that all, "legislation enjoys a presumption of constitutionality." Statev. Thompson (2001), 92 Ohio St.3d 584, 586, 752 N.E.2d 276. Any doubts about the constitutionality of a statute should be resolved in favor of a construction which upholds its validity. State v. Dorso (1983),4 Ohio St.3d 60, 61, 446 N.E.2d 449.
 {¶ 9} Ord. 539.07(b)(1) contains two distinct limitations on the sound level of audio equipment in an automobile. The first provision prohibits maintaining the audio system in a car, "at such a volume as to disturb the quiet, comfort or repose of other persons * * *." The second provision prohibits using the audio system, "at a volume which is plainly audible to persons other than the occupants of said vehicle." Appellant was charged with playing "loud music from auto" in violation of Ord. 539.07(b)(1). (9/1/2000 Uniform Traffic Ticket). This charge appears to encompass both provisions of Ord. 539.07(b)(1), and Appellant's arguments on appeal all assume that both provisions are implicated. Since we must determine that the first part of Ord. 539.07(b)(1) is constitutionally sound and provides ample justification for Appellant's conviction, there is no need for us to consider the constitutionality of the second part of the ordinance in this appeal.
 {¶ 10} The record plainly reflects that Appellant pleaded no contest to the loud music violation. A plea of no contest is an admission of the facts set forth in the complaint or indictment. State v. Bird
(1998), 81 Ohio St.3d 582, 584, 692 N.E.2d 1013, 1015. Therefore, Appellant admitted that he was playing loud music in and from his automobile so as to violate Ord. 539.07(b)(1).
 {¶ 11} Appellant's first argument is that the loud music ordinance is impermissibly vague. Appellant contends that the ordinance provides no objective standard of conduct, and therefore allows each police officer to use his or her own subjective and unfettered discretion in enforcing the ordinance.
 {¶ 12} "An enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford (1972), 408 U.S. 104,108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227.
 {¶ 13} "Under the vagueness doctrine, which is premised on theFourteenth Amendment due-process requirement that a `law give fair notice of offending conduct,' a statute is void for vagueness if it `"fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" * * * [or if] it encourages arbitrary and erratic arrests and convictions.' Papachristou v.Jacksonville (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 843,31 L.Ed.2d 110, 115-116 (quoting United States v. Harriss [1954], 347 U.S. 612,617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996)." Cincinnati v. Thompson
(1994), 96 Ohio App.3d 7, 24, 643 N.E.2d 1157, 1169.
 {¶ 14} In Dorso, supra, the Ohio Supreme Court was faced with a "void for vagueness" challenge of a Cincinnati noise ordinance. The Court was asked to determine whether the phrase, "to disturb the peace and quiet," was so subjective and dependent on the personal sensitivities of the listener that, essentially, the ordinance provided no measurable standard of conduct. Dorso at 63, 446 N.E.2d 449.
 {¶ 15} The Dorso Court stated that:
 {¶ 16} "[W]e construe the Cincinnati ordinance at issue to prohibit the playing of music, amplification of sound, etc., in a manner which could be anticipated to offend the reasonable person, i.e., the individual of common sensibilities. Specifically, we find the ordinance to proscribe the transmission of sounds which disrupt the reasonable conduct of basic human activities, e.g., conversation or sleep. Our construction of the ordinance does not permit the imposition of criminal liability upon a party whose conduct disturbs only the hypersensitive. Thus, the standard hereby adopted vitiates the claimed vagueness of the ordinance." Id. at 63-64, 446 N.E.2d 449.
 {¶ 17} Many other courts have held that noise statutes that are based on the "reasonable person" standard are sufficiently clear to withstand a "void for vagueness" challenge. Kovacs v. Cooper (1949),336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513; Village of Kelleys Island v.Joyce (Sept. 21, 2001), 6th Dist. No. E-01-003; Village of Edison v.Jenkins (June 7, 2000), 5th Dist. No. CA893; State v. Boggs (June 25, 1999), 1st Dist. No. C-980640; State v. Linares (1995), 232 Conn. 345,655 A.2d 737; Price v. State (Ind. 1993), 622 N.E.2d 954; City ofBeaufort v. Baker (1993), 315 S.C. 146, 432 S.E.2d 470; City of Madisonv. Baumann (1991), 162 Wis.2d 296, 470 N.W.2d 296.
 {¶ 18} Additionally, the fact that Ord. 539.07(b)(1) does not define the phrase, "disturb the quiet, comfort, or repose," does not render the ordinance impermissibly vague. This phrase is substantially synonymous with "disturbing the peace." Statutes which prohibit "disturbing the peace" are construed, if possible, to apply only to conduct which is actually intended to create a disturbance and to exclude conduct which would only be disturbing to an unduly sensitive person.Dorso, supra, at 64, 446 N.E.2d 449.
 {¶ 19} "`The term "disturb the peace" * * * [has] long been understood to mean disruption of public order by acts that are themselves violent or that tend to incite others to violence. Thus, one may be guilty of disturbing the peace * * * if he engages in "tumultuous" conduct, i.e., violent conduct that * * * endangers public safety or order. He may also be guilty of disturbing the peace through "offensive" conduct if by his actions he * * * incites others to violence or engages in conduct likely to incite others to violence.'" State v. Starsky
(1970), 106 Ariz. 329, 331, 475 P.2d 943, 945, quoting In re Bushman
(1970), 1 Cal.3d 767, 773, 463 P.2d 727, 730.
 {¶ 20} The offense of "disturbing the peace" has been understood, from its common law origin up to the present, to include a wide variety of conduct which destroys or threatens public order and tranquility.United States v. Woodard (C.A.7, 1967), 376 F.2d 136, 141. Whether or not conduct is deemed to "disturb the peace" is measured by the reasonableness of the conduct as viewed in the light of the surrounding facts and circumstances. Id.; Dorso, 4 Ohio St.3d at 64, 446 N.E.2d 449.
 {¶ 21} There seems to be no significant difference between part one of Ord. 539.07(b)(1) and the statute which was upheld in Dorso.
Therefore, for the reasons set forth in Dorso, Appellant's "void for vagueness" argument is rejected.
 {¶ 22} Appellant's second argument is that the statute is unconstitutionally overbroad on its face. The overbreadth doctrine is a very narrow concept applied only where First Amendment rights are at stake. Cleveland v. Trzebuckowski (1999), 85 Ohio St.3d 524, 528,709 N.E.2d 1148.
 {¶ 23} "A court may strike down an overly broad government enactment in its entirety, even if the party before the court has not engaged in activities protected by the First Amendment, `"if in its reach it prohibits constitutionally protected conduct."' Cleveland v.Trzebuckowski (1999), 85 Ohio St.3d 524, 528, 709 N.E.2d 1148, quotingGrayned v. Rockford (1972), 408 U.S. 104, 114, 92 S.Ct. 2294, 2302,33 L.Ed.2d 222, 231. The [overbreadth] doctrine allows such challenges because if an overly broad enactment is left in place, other persons may refrain from exercising their constitutionally protected rights for fear of criminal sanctions. Village of Schaumburg v. Citizens for a BetterEnvironment (1980), 444 U.S. 620, 634, 100 S.Ct. 826, 835,63 L.Ed.2d 73, 85-86. Overbreadth, however, is `manifestly strong medicine' that is employed `sparingly, and only as a last resort.' Broadrick v. Oklahoma
(1973), 413 U.S. 601, 613, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830, 841."Junction 615, Inc. v. Ohio Liquor Control Comm. (1999), 135 Ohio App.3d 33,42, 732 N.E.2d 1025.
 {¶ 24} Appellant's overbreadth argument of necessity involves a discussion of the free speech clauses of both the First Amendment to United States Constitution and Section 11, Article I of the Ohio Constitution. The Ohio Supreme Court has held, "that the free speech guarantees accorded by the Ohio Constitution are no broader than theFirst Amendment, and that the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution."Eastwood Mall, Inc. v. Slanco (1994), 68 Ohio St.3d 221, 222,626 N.E.2d 59, citing State ex rel. Rear Door Bookstore v. Tenth Dist.Court of Appeals (1992), 63 Ohio St.3d 354, 362-363, 588 N.E.2d 116. Therefore, Appellant's argument should be viewed primarily through caselaw dealing with the First Amendment of the United States Constitution.
 {¶ 25} "Music, as a form of expression and communication, is protected under the First Amendment [of the United States Constitution]."Ward v. Rock Against Racism (1989), 491 U.S. 781, 790, 109 S.Ct. 2746,2753, 105 L.Ed.2d 661, 674. Because Ord. 539.07(b)(1) implicates Appellant's First Amendment rights, the ordinance, as applied to Appellant, must meet the demands of the First Amendment, which states:
 {¶ 26} "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."
 {¶ 27} An ordinance may be facially invalid, "either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally `overbroad.'" Members of City Council v. Taxpayersfor Vincent (1984), 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772.
 {¶ 28} The parties in this case do not dispute that the City of Youngstown has an interest in protecting its citizens from unwelcome noise. Cf. Dorso, supra, 4 Ohio St.3d at 64, 446 N.E.2d 449. Municipal authority to regulate noise has been specifically granted by statute. R.C. § 715.49(A) states:
 {¶ 29} "(A) Any municipal corporation may prevent riot, gambling, noise and disturbance, and indecent and disorderly conduct or assemblages, preserve the peace and good order, and protect the property of the municipal corporation and its inhabitants." (Emphasis added.)
 {¶ 30} Ord. 539.07(b)(1) attempts to control noise emanating from automobile radios, music players and audio systems. Some radio noises have nothing to do with protected speech, e.g., the buzzing sound of static from a radio that is not properly tuned to a station. Therefore, as Ord. 539.07(b)(1) may unquestionably prohibit the broadcasting of some loud radio noises without infringing on constitutional rights, the ordinance is not facially invalid in all circumstances.
 {¶ 31} Appellant nevertheless contends that Ord. 539.07(b)(1) restricts a significant amount of constitutionally protected speech. It is apparent, however, that Ord. 539.07(b)(1) is not primarily directed at the content of the speech but at the volume of the noise coming from automobile audio systems. The ordinance's prescription against loud noises is primarily an attempt to control conduct, i.e., the use of the volume control, rather than an attempt to control the type of speech being broadcast. See Dorso, 4 Ohio St.3d at 64, 446 N.E.2d 449. "Where conduct and not merely speech is involved, * * * the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick v.Oklahoma (1973), 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830.
 {¶ 32} A party making an overbreadth challenge must show that there is, "a realistic danger that the ordinance will significantly compromise recognized First Amendment protections of individuals not before the Court, * * *." Id. Furthermore, a party who challenges the constitutionality of a statute on the basis that it is substantially overbroad must identify, "any significant difference between [its] claim that the ordinance is invalid on overbreadth grounds and [its] claim that it is unconstitutional as applied." Taxpayers for Vincent,466 U.S. at 802, 104 S.Ct. 2118, 80 L.Ed.2d 772. In other words, the party making the overbreadth challenge must demonstrate there are significant issues to be resolved that are separate and distinct from those raised by the facts of the case. Appellant has not shown that the rights of hypothetical third parties are affected by Ord. 539.07(b)(1) any differently than his own rights have been affected. The ordinance does somewhat impact on his right to play music, which right is protected by the First Amendment.Rock Against Racism, 491 U.S. at 790, 109 S.Ct. 2746, 105 L.Ed.2d 661. The ordinance does not, however, fully restrict such right and Appellant does not suggest how Ord. 539.07(b)(1) affects any other person or group any differently than it affects him. Appellant's overbreadth allegation raises no additional issues to be resolved beyond those relating to the constitutionality of the statute as applied to facts of his own case. Therefore, Appellant may not maintain an overbreadth challenge. SeeHoward Opera House Assoc. v. O'Neill, Crawford Green (D.Vt., 2001), 131 F. Supp.2d 559, 564.
 {¶ 33} This leads us to a review of Appellant's conviction to see if there is a constitutional violation as applied to the facts of the case. Appellant does not challenge his "no contest" plea. Given the procedural history of this case and the relevant caselaw, we must assume that he did, in fact, play loud music from his car which was plainly audible and which disturbed the quiet, comfort and repose of others. The issue, then, is whether a municipality may legitimately regulate the type of activity described in Ord. 539.07(b)(1) (which Appellant has admitted to) without violating the First Amendment.
 {¶ 34} A municipality, "may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are `justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" Rock Against Racism, 491 U.S. at 791,109 S.Ct. 2746, 105 L.Ed.2d 661; see also Painesville Bldg. Dept. v. Dworken Bernstein Co., L.P.A. (2000), 89 Ohio St.3d 564, 567, 733 N.E.2d 1152.
 {¶ 35} "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages and not on others." Rock Against Racism,491 U.S. at 791, 109 S.Ct. at 2754, 105 L.Ed.2d at 675. A statute which interferes with protected speech is content neutral so long as it is, "justified without reference to the content of the regulated speech."Clark v. Community for Creative Non-Violence (1984), 468 U.S. 288, 293,104 S.Ct. 3065, 82 L.Ed.2d 221. "[T]he principal inquiry * * * is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Rock Against Racism, 491 U.S. at 791,109 S.Ct. 2746, 105 L.Ed.2d 661.
 {¶ 36} Appellee has argued that it has an interest in protecting its citizens from aberrant and unwelcome noise. It has repeatedly been held that this interest is a content neutral justification for laws which regulate the time, place or manner of protected speech. Id. at 792,109 S.Ct. at 2746, 105 L.Ed.2d 661; Boos v. Barry (1988), 485 U.S. 312, 320,108 S.Ct. 1157, 99 L.Ed.2d 333; Dorso, 4 Ohio St.3d at 64, 446 N.E.2d 449. Furthermore, Ord. 539.07(b)(1), part one, regulates the use of audioequipment, i.e, radios, cassette players, compact disk players, etc., rather than regulating the type of sound or speech being broadcast by that equipment. Therefore, Ord. 539.07(b)(1), part one, satisfies the "content neutral" requirement.
 {¶ 37} A time, place or manner regulation must also be narrowly tailored to serve a significant governmental interest. Once again, Appellee has identified its significant interest: it seeks to protect its citizens against unwelcome noise. A municipality has, "`a substantial interest in protecting its citizens from unwelcome noise.' * * * The government may act to protect even such traditional public forums as city streets and parks from excessive noise." Rock Against Racism, supra, at 796, 109 S.Ct. 2746, 105 L.Ed.2d 661, quoting Taxpayers for Vincent,466 U.S. at 806, 104 S.Ct. 2118, 80 L.Ed.2d 772.
 {¶ 38} A "time, place or manner" statute is narrowly tailored to serve a governmental interest, "`so long as the * * * regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Id. at 799, 109 S.Ct. 2746, 105 L.Ed.2d 661, quoting United States v. Albertini (1985), 472 U.S. 675, 689,105 S.Ct. 2897, 86 L.Ed.2d 536. Narrow tailoring, in the context of time, place or manner restrictions, "need not be the least restrictive or least intrusive means," of achieving the government's intended result. Id. at 798, 109 S.Ct. 2746, 105 L.Ed.2d 661.
 {¶ 39} "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative. `The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted." Id. at 800, 109 S.Ct. 2746,105 L.Ed.2d 661, quoting Albertini at 689, 105 S.Ct. 2897, 86 L.Ed.2d 536.
 {¶ 40} Appellee chose to control excess noise by prohibiting the use of car radios, "at such volume as to disturb the quiet, comfort or repose of other persons * * *." As stated earlier, the phrase, "disturb the quiet, comfort or repose," has a longstanding and well-defined meaning, and is based on an objective "reasonable person" standard. Appellee's interest in protecting its citizens from unwelcome noise is obviously served by part one of Ord. 539.07(b)(1). The ordinance only infringes on protected speech when it is broadcast at such a volume as to cause or incite a breach of the peace. Although as a Court we may have chosen a different method to control excessive and unwelcome noise, we must defer to Appellee's determination as to how its interests will best be served so long as it is reasonable. Rock Against Racism,491 U.S. at 800, 109 S.Ct. 2746, 105 L.Ed.2d 661.
 {¶ 41} Finally, a time, place, or manner regulation must leave open ample alternative channels for communication of the information. Ord. 539.07(b)(1), part one, is not a complete ban on playing music from automobiles. It permits music to be played at any volume which does not disturb the peace of others, i.e., which does not cause or tend to incite a breach of the peace. Appellant had ample opportunity to play music from his car, albeit at a volume lower than that which would cause a disturbance of the peace. Furthermore, in respect to part one of Ord. 539.07(b)(1), Appellant made no attempt to show that any of the alternate avenues of communication were inadequate. See Taxpayers for Vincent,
supra, 466 U.S. at 812, 104 S.Ct. 2118, 80 L.Ed.2d 772. Therefore, the third requirement necessary to uphold a time, place or manner regulation of speech has been fulfilled.
 {¶ 42} In that none of Appellant's arguments are persuasive, we hereby overrule Appellant's first and second assignments of error.
 {¶ 43} Appellant's third assignment of error asserts:
 {¶ 44} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BECAUSE IT FINED APPELLANT FOUR HUNDRED DOLLARS PURSUANT TO SECTION 539.07(b)(2) OF THE YOUNGSTOWN CODIFIED ORDINANCES, WHICH IS AN UNCONSTITUTIONAL PROVISION BECAUSE IT CONFLICTS WITH SECTION 501.99 OF THE YOUNGSTOWN CODIFIED ORDINANCES AND VIOLATES THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 16
OF THE OHIO CONSTITUTION."
 {¶ 45} Appellant argues that Ord. 501.99(a)(2) provides that, for a third degree misdemeanor, the maximum permissible fine is $500. Appellant argues that a second offense of the loud music ordinance, i.e., Ord. 539.07(b)(1), is designated in Ord. 539.99(a) as a third degree misdemeanor. Appellant argues that the loud music ordinance attempts to impose an additional mandatory fine of $400 for second offence, above and beyond the fine provided for in Ord. 501.99(a)(2). Appellant argues that these ordinances are in conflict, and that the $500 maximum fine imposed by Ord. 539.99(a)(1) should prevail over the potentially larger fine which could be imposed by Ord. 539.07(b)(2).
 {¶ 46} Appellant was fined $400. This amount is within the $500 maximum fine permitted by Ord. 501.99(a)(1). Therefore, Appellant has not been prejudiced by any error, if error exists, in the potentially higher fine that could have been imposed by Ord. 539.07(b)(2). Because Appellant must not only show error, but that he was harmed or prejudiced by that error, this assignment of error fails as well. See Crim.R. 52(A). Appellant's third assignment of error is overruled.
 {¶ 47} For all the aforementioned reasons, we overrule all three of Appellant's assignments of error and we hereby affirm the judgment of the lower court.
 {¶ 48} Donofrio, J., dissents based on same reasoning in State v.Cornwell (Sept. 23, 2002), 7th Dist. No. 00-C.A.-223.
Vukovich, P.J., concurs.